IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 15-00129-01-CR-W-BCW |
| ) | |
| DUSTY A. PEOPLES, ) | |
| ) | |
| Defendant. ) | |

REPORT AND RECOMMENDATION

This matter is currently before the Court on defendant's Motion to Suppress All Evidence Seized as the Result of the Unlawful Search of Dusty Peoples' Motel Room (doc #32). For the reasons set forth below, it is recommended that the motion be denied.

I. BACKGROUND

On March 27, 2015, a three-count criminal complaint was filed against defendant Dusty A. Peoples and Melissa A. Tully.[1] Defendant Peoples was charged with possession with intent to distribute methamphetamine, possession of a firearm in furtherance of a drug trafficking crime and being a felon in possession of a firearm.

On April 14, 2015, the Grand Jury returned a three-count indictment against defendant Peoples. Count One charged that on March 26, 2015, defendant possessed with intent to distribute methamphetamine. Count Two charged that on March 26, 2015, defendant possessed a firearm in furtherance of the drug-trafficking crime alleged in Count One. Count Three charged that on March 26, 2015, defendant, having been convicted of a crime punishable by imprisonment

---

[1] Melissa Tully was only charged with being a felon in possession of a firearm. This charge was later dismissed by the government.

for a term exceeding one year, possessed a Glock, Model 42, .380 handgun.

Counts One and Two of the indictment were subsequently dismissed by the government after a lab analysis confirmed that the substance allegedly in the possession of defendant, which had field-tested positive for methamphetamine, was in fact dimethylsulfone, a non-controlled substance. (See Motion to Dismiss Counts One and Two of the Indictment (doc #28) at 1)

An evidentiary hearing on the motion to suppress was held on September 10, 2015. Defendant Peoples was represented by Assistant Federal Public Defender Carie Allen. The government was represented by Assistant United States Attorney Jeffrey Q. McCarther. The government called Officers Bobbi King and Deryck Galloway of the Kansas City, Missouri Police Department as witnesses. The defense called Vernon Ray Robinson, defendant Peoples' grandfather, to testify.

## II. FINDINGS OF FACT

On the basis of the evidence presented at the evidentiary hearing, the undersigned submits the following proposed findings of fact:

1. Officer Bobbi King testified that a lot of calls for service come from the Crown Lodge Motel located at 8500 Blue Parkway, Kansas City, Missouri. (Tr. at 4) Officer King testified that there are also numerous stolen automobiles that come in and out of that location. (Tr. at 4) Officer King testified that she has investigated crimes that have taken place at the Crown Lodge, including stolen auto crimes. (Tr. at 4)

2. Officer King testified that when officers have a reasonable belief that a crime is occurring in one of the rooms at the Crown Lodge, the typical protocol is to contact management and inform management of the investigation. (Tr. at 4) Officer King testified that she has frequently worked with Grover Clawson,[2] the manager of the Crown Lodge Motel. (Tr. at 4) In working with Mr. Clawson, Officer

---

[2]Government counsel proffered that Mr. Clawson would have testified regarding the policies and protocol of the Crown Lodge, but Mr. Clawson passed away three weeks prior to the hearing. (Tr. at 2-3)

2

King testified that she has become familiar with the Crown Lodge policies. (Tr. at 5)

3. One of the Crown Lodge policies was that unregistered guests were not allowed to stay in the Crown Lodge rooms. (Tr. at 5) Another policy was that the Crown Lodge allowed no criminal activity to take place in their rooms. (Tr. at 5) When informed that criminal activity may be taking place in one of their rooms, management wanted the occupants out of the room immediately. (Tr. at 5) Management would often request that the police evict the occupants from the room. (Tr. at 5) Management would provide the police with the key to a room when criminal activity is suspected so that the police could evict the occupants of the room. (Tr. at 12-13, 17-18)

4. At approximately 9:00 a.m. on March 26, 2015, Officer King was working in an undercover capacity at the Crown Lodge. (Tr. at 5-6) Officer King observed a silver Toyota Camry bearing license plate SH6V2P. (Tr. at 6) Officer King had seen the vehicle approximately one month prior and knew that it had been reported stolen. (Tr. at 6) When Officer King had previously seen the vehicle, a person by the name of Sammy Kanatzer was driving the vehicle. (Tr. at 6, 18) Officer King knew that Sammy Kanatzer had felony warrants for his arrest. (Tr. at 7, 14) Officer King conducted surveillance on the vehicle. (Tr. at 7)

5. Officer King observed a white female[3] and a white male[4] come out of Room 114 of the Crown Lodge and approach the vehicle. (Tr. at 8, 14) The female threw a bag into the vehicle. (Tr. at 8) The female and the male had a conversation across the vehicle. (Tr. at 8) Officer King thought the male might be Sammy Kanatzer. (Tr. at 9) The female got into the vehicle and left. (Tr. at 8-9) Officer King followed the vehicle. (Tr. at 9) Officer King requested assistance from patrol officers. (Tr. at 9-10) The female drove the vehicle to Probation and Parole in Independence. (Tr. at 9) Uniformed officers placed the female under arrest for possession of the stolen vehicle. (Tr. at 10)

6. Officer King testified that another officer, Officer Deryck Galloway, was dispatched to the Crown Lodge to inform management of the criminal activity that had taken place. (Tr. at 10) Officer King told Officer Galloway that the male in Room 114 was associated with the driver of a stolen vehicle who had just been taken into custody and that Officer King believed the male in the motel room to be Sammy Kanatzer. (Tr. at 10-11) Officer King told Officer Galloway to go the management of the Crown Lodge and advise them of the situation and also that officers believed that Sammy Kanatzer was in Room 114 and that he had felony warrants for his arrest. (Tr. at 19-20)

---

[3]The white female was identified as Melissa Tully. (Tr. at 21)
[4]Officer King identified the white male who came out of Room 114 of the Crown Lodge as defendant Dusty Peoples. (Tr. at 9)

3

7. Officer Galloway testified that when he arrived at the Crown Lodge, he went into the management office to find out who had rented Room 114. (Tr. at 25) The clerk gave Officer Galloway a photocopy of an ID of an older gentleman, Vernon Robinson. (Tr. at 25; Defendant's Ex. 6 at 1-2) Officer Galloway knew that the person who officers believed to be in the room was a younger white male. (Tr. at 25-26) Officer Galloway told the clerk that he was "looking for a young white male, not this guy." (Tr. at 26) Officer Galloway told the clerk that a stolen vehicle had been observed leaving the motel parking lot, that one person associated with the stolen vehicle had been taken into custody, but that there was still a young man who was associated with the stolen vehicle inside Room 114. (Tr. at 26, 29-30; Defendant's Ex. 6 at 1) Officer Galloway was aware of the Crown Lodge policy to evict occupants who they have a reasonable belief are engaged in criminal conduct. (Tr. at 26) Officer Galloway did not mention the name Sammy Kanatzer to the clerk. (Tr. at 30-31)

8. Officer Galloway testified that he was advised that ammunition and a gun holster had been found inside the stolen vehicle and that Melissa Tully had stated that a gentleman by the name of Dusty had spent the night with her in the motel and that Dusty was in Room 114 at the Crown Lodge. (Tr. at 24-25; Defendant's Ex. 6 at 2)

9. The clerk of the Crown Lodge Motel gave Officer Galloway the key to Room 114 so that he could evict the occupants inside. (Tr. at 26; Defendant's Ex. 6 at 2) Officer Galloway testified that he did not force the clerk to give him the key; she did so "extremely willingly." (Tr. at 36-37) Officer Galloway testified that he would not have asked management to go talk to the occupant first to ask him to leave as the officers had information that a gun was missing. (Tr. at 35) Officer Galloway testified that he would never place the management in that situation with an armed criminal. (Tr. at 35)

10. Officer Galloway knocked on the door of Room 114 several times and announced police. (Tr. at 26-27, 34) No one responded to the knocking. (Tr. at 27) Officer Galloway used the key and opened the door and observed a male (defendant Peoples) lying on the bed. (Tr. at 27) The room was cleared for other occupants, but none were located. (Tr. at 27) Officer Galloway observed a magazine with ammo in it lying on the floor next to the bed and some narcotics on the night stand. (Tr. at 27) Defendant Peoples was taken into custody. (Tr. at 27)

11. After defendant Peoples was secured, Officer Galloway went back and talked to the motel clerk to let her know that someone had been taken into custody and that the officers were attempting to obtain a search warrant for the room. (Tr. at 37-38) Officer Galloway also wanted to reassure himself regarding the motel policy of evicting occupants who are believed to be involved in criminal activity. (Tr. at 37) The clerk advised Officer Galloway that in addition to evicting occupants believed

4

to be involved in criminal activity, the motel evicts people who are sleeping overnight in a room, but who are not on their agreement. (Tr. at 37-38) The clerk indicated that by handing over the key, she wanted the occupants of Room 114 evicted. (Tr. at 37)

12. Officers applied for a search warrant for the motel room. (Tr. at 27) A handgun was discovered in the room as a result of the search warrant. (Tr. at 27)

13. Vernon Ray Robinson, defendant Peoples' grandfather, testified that Peoples called him on March 25, 2015, and asked if Robinson would rent a room at the motel for Peoples because Peoples did not have his ID with him. (Tr. at 40) Mr. Robinson went to the Crown Lodge to rent a room for Peoples. (Tr. at 40) Defendant Peoples was standing next to Mr. Robinson in the lobby when Robinson rented the room. (Tr. at 41) Mr. Robinson testified that he made no effort to hide the fact that Peoples was going to be staying in the room instead of Robinson. (Tr. at 41) It was Mr. Robinson's understanding that everyone knew that Peoples was going to be using the room. (Tr. at 41) Mr. Robinson does not know if the motel clerk he dealt with on March 25 was the same clerk working on March 26. (Tr. at 42)

## III.  DISCUSSION

Defendant Peoples seeks to suppress all evidence and testimony relating to such evidence obtained during the search of defendant's motel room. (Motion to Suppress All Evidence Seized as the Result of the Unlawful Search of Dusty Peoples' Motel Room (doc #32) at 1) Specifically, defendant argues that the Fourth Amendment protects the right of people to be secure in their houses (which includes motel rooms) against unreasonable searches and seizures. (Id. at 3) Because police entered defendant's room without obtaining a search warrant and without any valid exception to the search warrant requirement, defendant argues that any evidence seized as a result of that initial entry or pursuant to the search warrant which was obtained using information obtained during the initial illegal entry must be suppressed. (Id. at 4)

"The Fourth Amendment's 'protection against unreasonable searches and seizures extends to a person's privacy in temporary dwelling places such as hotel or motel rooms.'" United States v. Bohmont, 413 F. App'x 946, 950 (8th Cir. 2011)(quoting United States v. Conner, 127 F.3d 663,

5

666 (8th Cir. 1997)). However, "once a guest has been *justifiably* expelled, the guest is without standing to contest an officer's entry into his hotel room on Fourth Amendment grounds." Young v. Harrison, 284 F.3d 863, 867 (8th Cir. 2002)(emphasis in original). Justification for the expulsion/eviction may come from a state statute authorizing the expulsion/eviction. See Id.; United States v. Rambo, 789 F.2d 1289, 1295 (8th Cir. 1986). Missouri law allows a hotel to eject a person when the hotel operator reasonably believes that the person is using the premises for an unlawful purpose or when the person is in violation of any law or hotel regulations. The Missouri statute provides in part:

> An owner or operator of a hotel may eject a person from the hotel and notify the appropriate local law enforcement authorities for any of the following reasons:
>
> * * *
>
> (3) The owner or operator reasonably believes that the individual is using the premises for an unlawful purpose;
>
> * * *
>
> (5) The individual is in violation of any federal, state or local laws or regulations relating to the hotel.

Mo. Rev. Stat. § 315.075.

As set forth above, Officer Galloway advised the Crown Lodge Motel clerk that a stolen vehicle had been observed leaving the motel parking lot, that one person associated with the stolen vehicle had been taken into custody, but that there was still a young man who was associated with the stolen vehicle inside Room 114. (See Fact No. 7, supra) The motel clerk provided the key to Room 114 to Officer Galloway so that he would evict the occupants of Room 114 due to the motel clerk's belief that the occupants of Room 114 were engaged in criminal conduct. (See Fact Nos. 9 and 11, supra) In addition to the motel policy of evicting occupants who are believed to be

involved in criminal activity, the clerk advised Officer Galloway that the motel evicts people who are sleeping overnight in a room, but who are not on their agreement. (See Fact No. 11, supra) Defendant Peoples was not a registered guest at the motel, as defendant's grandfather had rented the room in his name. (See Fact Nos. 7 and 13, supra)

Based on Mo. Rev. Stat. § 315.075, the motel management was justified in evicting the occupants of Room 114 and in seeking the assistance of local law enforcement to carry out that eviction. The Court finds that Officer Galloway was acting at the request of and on behalf of the management of the Crown Lodge Motel when he went to Room 114. As set out in United States v. Rambo, 789 F.2d 1289, 1295-96 (8th Cir. 1986), a person no longer has a reasonable expectation of privacy in a motel room, and therefore is without standing to contest officers' entry into the room, when officers, at the request of management, act to evict the person. See also United States v. Molsbarger, 551 F.3d 809, 811 (8th Cir. 2009)("Justifiable eviction terminates a hotel occupant's reasonable expectation of privacy in the room.") The rental period terminates and control over the room reverts to the management. Rambo, 789 F.2d at 1295-96; United States v. Bohmont, 413 F. App'x 946, 951 (8th Cir. 2011). "In sum, [defendant's] constitutional rights were not violated by the officers' entry into his hotel suite because when a hotel guest is properly evicted he loses the Fourth Amendment's protection against warrantless entry." Young v. Harrison, 284 F.3d 863, 869 (8th Cir. 2002). There was no constitutional violation.

## IV.  CONCLUSION

Based on the foregoing, it is

RECOMMENDED that the Court, after making an independent review of the record and applicable law, enter an order denying defendant's Motion to Suppress All Evidence as the Result of the Unlawful Search of Dusty Peoples' Motel Room (doc #32).

Counsel are reminded they have fourteen days from the date of receipt of a copy of this Report and Recommendation within which to file and serve objections to same. A failure to file and serve timely objections shall bar an attack on appeal of the factual findings in this Report and Recommendation which are accepted or adopted by the district judge, except on the grounds of plain error or manifest injustice.

                                        */s/ Sarah W. Hays*
                                        SARAH W. HAYS
                                        UNITED STATES MAGISTRATE JUDGE